**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

BRENTON C. BURGEN

                      Plaintiff,

    v.                                No. 14-CV-131
                                   (MAD/CFH)

CAROLYN W. COLVIN, Acting Commissioner of
Social Security Administration,

                            Defendant.

───────────────────────────────

**APPEARANCES:**                                **OF COUNSEL:**

THE OLINSKY LAW GROUP            HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
300 S. State Street
Fifth Floor, Suite 520
Syracuse, New York 13202

HON. RICHARD S. HARTUNIAN      DAVID L. BROWN, ESQ.
United States Attorney for the          Special Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff Brenton Burgen ("Burgen") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Acting Commissioner of Social Security

("Commissioner") denying his application for benefits under the Social Security Act.

Burgen moves for a finding of disability and the Commissioner cross-moves for a

───────────────────────

[1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

judgment on the pleadings.  Dkt. Nos. 12, 13.  For the reasons which follow, it is recommended that the Commissioner's decision be affirmed.

## I. Background

### A. Facts

Born on September 18, 1969, Burgen was thirty-nine years old on the alleged disability onset date.  T. 23, 45, 178.[2]  Burgen completed the ninth grade, but recently prior to his hearing received his high school diploma from BOCES.  T. 45.  Burgen's previous work experience included baking, driving taxi cabs, and working in warehouses for factories and manufacturing.  T. 50-54, 216.  Burgen alleges disability from headaches, polysubstance abuse, anxiety, panic attacks, depression, and post-traumatic stress disorder ("PTSD").  T. 26, 215.

### B. Procedural History

On February 23, 2011, Burgen protectively filed a Title II application for disability and disability insurance benefits claiming an alleged onset date of January 12, 2009.  T. 178-82.  That application was denied on May 12, 2011.  T. 85-95.  Burgen requested a hearing before an administrative law judge ("ALJ") and a hearing was held before ALJ Elizabeth W. Koennecke on July 26, 2012.  T. 40-66 (hearing transcript), 97-177.  In a decision dated September 7, 2012, the ALJ held that Burgen was not entitled to disability benefits.  T. 20-39.  Burgen filed a timely request for review, and on January

---

[2]"T." followed by a number refers to the pages of the administrative transcript filed by the Acting Commissioner.  Docket No. 8.

15, 2014, the Appeals Council denied Burgen's request, thus making the ALJ's findings the final decision of the Commissioner.  T. 1-6, 17-19.  This action followed.

## II. Discussion

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Berry, 675 F.2d at 467.  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  42 USC § 405(g) (2006); Halloran, 362 F.3d at 31.

## B.  Determination of Disability[3]

"Every individual who is under a disability shall be entitled to a disability. . . benefit. . . ." 42 U.S.C. § 423(a)(1) (2004).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based upon 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is

---

[3] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably."  Donato v. Sec 'y of Health and Human Servs., 721 F.2d 414, 418 n. 3 (2d Cir.1983) (citation omitted).

currently engaged in substantial gainful activity.  If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.  Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).


### C. ALJ Koennecke's Findings

Burgen, represented by an attorney, testified at the hearing held on July 26, 2012. T. 42-66 (transcript from the administrative hearing).  Using the five-step disability sequential evaluation, the ALJ found that Burgen (1) had not engaged in substantial gainful activity since January 12, 2009, the alleged onset date; (2) had the following severe medically determinable impairments: post-traumatic stress disorder (variously

5

characterized) and polysubstance abuse; (3) did not have an impairment, alone or in combination, sufficient to meet the listed impairments in Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintained

> the residual functional capacity [("RFC")] to perform a full range of work at all exertional levels . . . [as Burgen] retain[ed] the ability, on a sustained basis, to frequently understand, carry out, and remember simple instructions; to frequently respond appropriately to supervision, co-workers, and usual work situations; and to frequently deal with changes in a routine lower contact work setting[;]

and thus, (5) remained capable of performing past relevant work as a warehouse worker.

### D.  Burgen's Contentions

Burgen contends that the ALJ erred in concluding that substantial evidence in the record supported a finding that Burgen retained sufficient residual functional capacity (RFC) to perform work.  Specifically Burgen alleges that the ALJ did not properly evaluate the medical evidence or his credibility when determining his RFC, or correctly support Step 4 of the disability determination by concluding that vocational expert testimony was not required.

### 1. RFC

The ALJ determined that Burgen retained the RFC to perform work at all exertional levels with specific limitations.  T. 30-34.  RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists

of physical limitations, symptoms, and other limitations beyond the symptoms. <u>Martone v. Apfel</u>, 70 F. Supp. 2d 145,150 (N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." <u>Martone</u>, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. <u>New York v. Sullivan</u>, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960 (2003). The Second Circuit has clarified that, in Step 5 of the Commissioner's analysis, once RFC has been determined "the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's [RFC]." <u>Pourpre v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009).

> Each finding as to the plaintiff's functional abilities must be supported by substantial evidence because conclusory statements regarding plaintiff's capacities are not sufficient . . . Only after the ALJ has described the plaintiff's capabilities on a function-by-function basis supported by substantial evidence may RFC then be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

<u>DiVetro v. Comm'r of Soc. Sec.</u>, No. 05-CV-830 (GLS/DEP), 2008 WL 3930032, at *2 (N.D.N.Y. Aug. 21, 2008) (internal quotation marks and citations omitted).

The focus of the parties' arguments are on the doctors' evaluations of Burgen's conditions and the medical consequences thereof. The federal regulations detail how an ALJ shall evaluate such evidence:

> [M]edical sources . . . provide evidence, including opinions, on the nature and severity of your impairment(s). Although [the ALJ] consider[s] opinions from medical sources on issues such as whether your impairment(s) meet[] or equal[]

the requirements of . . . the Listing . . .,your residual functional capacity . . ., or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

20 C.F.R. § 404.1527 (d)(2). The factors to be used in weighing medical opinions include:

- The examining relationship between the individual and the "acceptable medical source";

- The treatment relationship between the individual and a treating source, including its length, nature, and extent as well as frequency of examination;

- The degree to which the "acceptable medical source" presents an explanation and relevant evidence to support an opinion, particularly medical signs and laboratory findings;

- How consistent the medical opinion is with the record as a whole;

- Whether the opinion is from an "acceptable medical source" who is a specialist and is about medical issues related to his or her area of specialty; and

- Any other factors brought to our attention, or of which we are aware, which tend to support or contradict the opinion.

Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *2-*3 (Aug. 9, 2006) (explaining 20 C.F.R. §§ 404.1527(d) & 416.927(d)). The opinion of a consultative examiner like Drs. Shapiro and Coleman may constitute substantial evidence.

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consults, since such consultants are deemed to be qualified experts in the field of social security disability. Such reliance is particularly appropriate where ... the opinions of these ... State agency medical consultants are supported by the weight of the evidence.

8

See Fiozzo v. Barnhart, No. 05–CV–561 (LEK/VEB), 2011 WL 677297, at *8 (N.D.N.Y. Jan.19, 2011) (citations omitted); see also Diaz v. Shalala, 59 F.3d 307, 313 n. 5 (2d Cir.1995) (explaining that "the opinions of nonexamining sources [can] override treating sources' opinions provided they are supported by evidence in the record.") (citations omitted); McEaney v. Comm. of Soc. Sec., 536 F.Supp.2d 252, 256 (N.D.N.Y.2008) ("the evaluations of non-examining State agency medical and psychological consultants may constitute substantial evidence ... An ALJ must treat such evaluations as expert opinion evidence of non-examining sources ... This treatment extends to ... RFC assessments [because] ... [s]tate agency consultants are experts in evaluating the medical issues of disability claims.") (citations omitted).

For the reasons explained infra, the ALJ accorded appropriate weight to each of the sources listed below, providing explicit reasoning for each of the examiners, and her RFC decision is supported by substantial evidence and should be affirmed.

### a. Dr. Shapiro

In determining Burgen's RFC, the ALJ gave

> some weight to the consultative psychiatric examination of [Burgen] that was conducted by Dr. Shapiro . . . find[ing] support in the record for Dr. Shapiro's medical source statement, to the extent Dr. Shapiro determined that [Burgen] appeared capable of adequately understanding and following some instructions and directions, as well as completing some tasks, but might have difficulty interacting appropriately with others due to social discomfort and withdrawal, and did not appropriately manage stress . . . [and] placed little weight on Dr. Shapiro's conclusion that [Burgen]'s psychiatric condition "might" cause him to experience vocational difficulties, because it is just as likely that the . . . psychiatric condition "might not" cause him to

> experience vocational difficulties.  The [ALJ] . . . determined
> that Dr. Shapiro's medical source statement, while placing
> some limitations on the type of work that [Burgen] was
> capable of doing, does not preclude [Burgen] from
> performing simple, unskilled work in a low contact setting.

T. 31; see also T. 274.  Burgen contends that Dr. Shapiro's medical source statement

should have been afforded more weight than the ALJ gave him, as Dr. Shapiro's

opinion was supported by the record as a whole.

Prior to engaging in any review of the ALJ's decision, it is important to note that

Burgen's repeated references to the medical record as a whole should be clarified so

as to not overstate his case.  There are no medical records to review in Burgen's case.

Burgen testified that he is not engaging in treatment due to financial hardships;

however, even if he obtained insurance he was unsure whether he would pursue any

treatment.  T. 55.  Further, Burgen states that he is adverse to taking medication to

alleviate his psychological issues because he does not trust the medications or wish to

be exposed to their side effects.  T. 59.  Both of these sentiments were also conveyed

to Burgen's retained examiner, Dr. Coleman.  T. 307 ("[Burgen] clearly appears to be

not interested in addressing treatment possibilities for the 2007 source of his PTSD,

and is obviously not interested in addressing this area with medications.").  The medical

evidence before the ALJ consisted of the psychiatric examination by consultative

examiner Dr. Shapiro (T. 271-75), the psychiatric review technique and RFC

assessment by State Agency review psychiatrist Dr. Apacible (T. 276-94), and medical

source statement from plaintiff's retained consultative examiner Dr. Coleman (T. 299-

307).  The ALJ left the hearing record open for the submission of additional medical

evidence; however, nothing was submitted.  T. 23-24, 42-44.

It is worth repeating that the plaintiff bears the initial burden of proof to establish each of the first four steps.  DeChirico, 134 F.3d at 1177.  "A lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."  Reynolds v. Colvin, 570 Fed. App'x 45, 47 (2d Cir. 2014) (citing Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012)).  The lack of any treatment records for the three years after the alleged onset date, or any other proof by plaintiffs, potentially represents substantial evidence supporting the ALJ's denial of benefits.  See also Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (explaining that the ALJ "is entitled to rely not only on what the record says, but also on what it does not say.") (citations omitted).

Despite Burgen's contentions, Dr. Shapiro's report is not inconsistent with the RFC which the ALJ articulated.  Conversely, Dr. Shapiro's report supports the ALJ's RFC determination.  First, Dr. Shapiro found that Burgen was "capable of adequately understanding and following some instructions and directions as well as completing some tasks."  T. 274.  This finding supports the ALJ's conclusion that Burgen retained the RFC "to frequently understand, carry out, and remember simple instructions."  T. 30. It also supports the ALJ's determination that Burgen can successfully complete any type of work, including unskilled work.  See SSR 85-15 (explaining that "[t]he basic mental demands of competitive, remunerative, unskilled work include [inter alia] the abilities (on a sustained basis) to understand, carry out, and remember simple instructions.").

Further, Dr. Shapiro's contentions that Burgen "may have difficulty interacting

appropriately with others due to social discomfort and withdrawal [and a]ttending work or maintaining a schedule may be difficult due to [a] lack of motivation and lethargy," does not definitively establish that Burgen is unable to successfully maintain a working schedule. T. 274. Burgen's claims that such a statement is dispositive are belied by his own testimony during his hearing that in 2009, when he was involved with a scuffle with a co-worker resulted in his decision to quit in lieu of being terminated, T. 51-52, Burgen received uncontested unemployment benefits despite the fact that he chose to end his employment because his boss "thought [he] was a good kid, so they ended up . . . just g[iving the unemployment benefits] to [him]." T. 65. Further, in the other instance where Burgen lost his job due to an issue with a co-worker, it was after he had previously been employed for three years with the company. T. 52-53. Other employment opportunities in Burgen's history which were terminated were due to Burgen's own volition when he decided to quit due to his decision to relocate. T. 54. The ALJ's findings that Dr. Shapiro's statement did not equate to a definitive limitation were also supported by the Mental Residual Functioning Capacity Assessment completed by Dr. Apacible which indicated only moderate difficulties in maintaining social functioning. T. 286, 291-93.

Lastly, to the extent that Burgen contends medical evidence illustrates that he is unable to perform the ALJ's RFC, it is Burgen's burden to present such evidence. See Schmelzle v. Colvin, No. 12-CV-1159 (GLS/ATB), 2013 WL 3327975, at *14 (N.D.N.Y. July 2, 2013) (explaining that it is the "plaintiff [who] bears the burden with respect to the RFC determination at step four . . . ."). Burgen has failed to present any such evidence, as the record is devoid of any medical records except the consultative

and state agency examinations outlined above. Additionally, for the reasons stated supra, Dr. Shapiro's opinion was not inconsistent with the ALJ's RFC assessment. Accordingly, given the fact that the lack of medical evidence can serve as substantial evidence that functional capacity limitations in excess of the ALJ's stated RFC limitations do not exist, in conjunction with the consistency of Dr. Shapiro's assessment with the ALJ's RFC findings, the Commissioner's decision should be affirmed.

### b. Dr. Coleman

Dr. Coleman was retained by Burgen's counsel to interview Burgen in order to provide a Medical Source Statement, which he did. T. 299-307.

> The [ALJ] . . . accorded little weight to the medical source statement . . . that was completed by Dr. Coleman . . . Dr. Coleman opined, in pertinent part, that [Burgen]'s mental ability to perform work was unlimited or very good in the following areas: remembering work-like procedures; understanding and remembering very short and simple instructions; carrying out very short and simple instructions; maintaining attention for a two-hour segment; asking simple questions or requesting assistance; and being aware of normal hazards and taking appropriate precautions . . . Dr. Coleman further opined that [Burgen]'s mental ability to perform work was limited, but satisfactory, in the following areas: sustaining an ordinary routine without special supervision; making simple work-related decisions; and adhering to basic standards of neatness and cleanliness . . . Dr. Coleman additionally opined that [Burgen]'s mental ability to perform work was seriously limited, but not precluded, in the following area: maintaining regular attendance and being punctual . . .; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; responding appropriately to changes in a routine work setting; traveling in unfamiliar places; and using public transportation . . . Finally, Dr. Coleman opined that

> [Burgen]'s mental ability to perform work was unable to meet
> competitive standards in the following areas: working in
> coordination with or proximity to others without being unduly
> distracted; getting along with co-workers or peers without
> unduly distracting them or exhibiting behavioral extremes;
> dealing with normal work stress; interacting appropriately
> with the general public; and maintaining socially appropriate
> behavior . . . .

T. 32 (citing T. 299-307) (internal citations omitted). The ALJ stated that the decreased

weight was due to (1) statements that Dr. Coleman's opinion was based on a review of

the medical record when there was no record to review; (2) internal inconsistencies;

and (3) an opinion rendered pursuant to "a one-time psychological evaluation of

[Burgen] by a non-treating source . . . arranged by [Burgen]'s attorney while [Burgen]

was in pursuit of benefits . . . [after] multiple unsuccessful prior applications for

benefits . . . who has no other evidence to corroborate his allegations of disability." T.

32. Burgen again claims the ALJ's assessment was in error because substantial

evidence in the medical record supports a finding that Dr. Coleman's assessment

should have been given greater weight.

While Burgen indicates otherwise, the circumstances under which he was evaluated

by Dr. Coleman are appropriate to consider in determining how much weight to afford a

consultative opinion. See Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at

*2-*3 (Aug. 9, 2006) (explaining that considerations "in weighing medical opinions from .

. . non-treating sources . . . include: The examining relationship between the individual

and the 'acceptable medical source'; [and] The treatment relationship . . . including its

length, nature, and extent as well as frequency of examination . . . ."). In this case,

Burgen was interviewed by Dr. Coleman on one occasion for an hour and a half. T.

299. There was no additional relationship beyond that. Dr. Coleman acknowledged that there was a "minimal amount of interview for this evaluation . . . ." T. 306. Also, the circumstances of the relationship were not for treatment purposes, but for obtaining an opinion to further Burgen's interests in this litigation. Further, despite the opportunity presented when the record was held open after the hearing, no medical evidence was submitted to establish Burgen's disability outside of Dr. Coleman's report. Accordingly, it was not incorrect for the ALJ to consider these factors and use them in according Dr. Coleman's opinion little weight.

Burgen points to various statements in Dr. Coleman's report, claiming they are indicative of greater restrictions to his functional capacity. However, such statements generalize or misconstrue the context in which the statement was made. For example, Burgen contends that Coleman's observations that Burgen was "ill at ease" and generally avoidant of people supported a more limited RFC. Pl. Memorandum of Law (Dkt. No. 12) at 12. However, Dr. Coleman's report read that Burgen "initially appeared quite ill-at-ease, but as time went on with the interview, he appeared to be more comfortable." T. 304. Further, Burgen explained to Dr. Coleman that he did not like a crowded bus because people had germs and he feared getting sick, a common fear held by most, and that despite his dislike of the crowds, Burgen was still able to independently take the bus into the city for his hearing, as well as to his BOCES classes "once per week [for about a year]," for which he recently had obtained his high school degree. T. 304-305. Accordingly, to the extent Burgen alleges that his subjective complaints about the bus, captured in Dr. Coleman's notes and utilized to form his opinion, are indicative of a more restrictive RFC, such contentions are

meritless because (1) subjective complaints are just that and should not be considered in determining RFC, see Aldrich v. Astrue, No. at 87 (N.D.N.Y. Sept. 28, 2009) (explaining the ALJ entitled to give less weight to a medical opinion that "appeared to rely more upon the subjective complaints of Plaintiff than any diagnostic or clinical evidence."), and (2) despite these complaints Burgen still persevered, took the bus, and accomplished attending his hearing, courses, and completing his degree which illustrate that these fears were not preclusive of engaging in productive work activity. Accordingly, the determination to ascribe Dr. Coleman's opinion little weight was well explained and supported by a full evaluation of the record.

Further, Dr. Coleman's limited evaluation also confirms evidence that is consistent with and supports the ALJ's RFC. Dr. Coleman noted that Burgen was able to consistently attend his BOCES classes, traveling by bus each week and interacting with others, to successfully obtain his high school degree. T. 305; see also T. 45 (testifying about completion of his degree). Dr. Coleman also noted that Burgen goes to the library and uses the computer and internet to research potential career opportunities. T. 305-306. Dr. Coleman notes that Burgen's biggest concern about impediments to him receiving a job are "his numerous misdemeanors and violations . . . .," with no mention of his mental health problems. T. 306. Further, despite Dr. Coleman's assessment about Burgen's inability to interact productively with others, he discussed Burgen's handful of close friends, who drive him around when needed and also assisted him in building a structure in the woods where he lived on and off for some time. T.306-307; see also T. 54-55.

Therefore, the Commissioner's decision should be affirmed.

### c. Dr. Apacible

Burgen contends that the ALJ failed to reconcile Dr. Apacible's opinion with her RFC

because Dr. Apacible opined that due to Burgen's depression, anxiety, and other

mental disorders, Burgen was moderately limited in his ability to interact and respond

appropriately with the public and his coworkers.  Pl. Memorandum of Law at 13 (citing

T. 286-287, 292).  However,

> As the Social Security Administration's guidelines . . .
> explain, . . .Section I is merely a worksheet to aide in
> deciding the presence and degree of functional limitations
> and the adequacy of documentation and <u>does not constitute
> the RFC assessment</u>. . . . Numerous district courts in [the
> Third Circuit] have recognized this point and held that
> Section I of the form may be assigned little or no weight . . .
> [rather] the degree and extent of the [plaintiff's] capacity or
> limitation must be described in narrative format in Section III.

<u>Smith v. Commissioner of Soc. Sec.</u>, 631 F.3d 632,637 (3rd Cir. 2010) (internal

quotation marks and citations omitted); <u>see</u> <u>also</u> <u>Rivera v. Colvin</u>, No. 11-CV-7469-LTS-

DF, 2014 WL 3732317, at *34, n.33 (S.D.N.Y. July 28, 2014) (citing <u>Rivera</u> to explain

that in determining an ultimate RFC recommendation, Section I is a guide and not

dispositive and the ALJ must instead look to Section III narrative).

In turning to Section III, Dr. Apacible's ultimate narrative conclusion was that

"[b]ased on the totality of . . . the file [Burgen] is capable of simple work in a setting with

limited contact with co-work[er]s or the public."  T. 293.  This conclusion is completely

consistent with the ALJ's RFC determination that Burgen can work in an environment

with simple directions in an ultimately "lower contact work setting".  T. 34.  Thus, the

Commissioner's decision should be affirmed.

### 3. Burgen's Credibility

Burgen contends that the ALJ erred by considering Burgen's receipt of unemployment benefits and failing to consider Burgen's disabling pain. It is the duty of the ALJ, "not the reviewing courts, to appraise witness credibility." Carvey v. Astrue, 380 Fed. Appx. 50, 53 (2d Cir. 2010) (citations omitted). The ALJ determines whether an ailment is an impairment based on a two-part test. First, the ALJ must decide, based upon objective medical evidence, whether "there [are] medical signs and laboratory findings which show . . . medical impairment(s) which could reasonably be expected to produce [such] pain. . . ." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 81 (N.D.N.Y. 2005); 20 C.F.R. § 404.1529 (2003). This primary evaluation includes subjective complaints of pain. 20 C.F.R. § 404.1529 (2003). "'Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.'" Barringer, 358 F. Supp. 2d at 81 (quoting Crouch v. Comm'r of Soc. Sec. Admin., No. 6:01-CV-0899 (LEK/GJD), 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003).

An ALJ must consider all symptoms, including pain, and the extent to which these symptoms are consistent with the medical and other evidence. 20 C.F.R. § 404.1529 (2003). The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment. See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978). The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

(i)  [The claimant's] daily activities;

(ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;

(v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;

(vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2003).

Here, the ALJ considered Burgen's subjective allegations of pain and disability, but reasonably found that they were not fully credible.  T. 33.  In so finding the ALJ discussed the factors outlined above, specifically noting: Burgen's multiple attempts for disability; testimony that Burgen would rather live in the woods than accept presumably public assistance and reside at the Oxford Inn; Burgen's receipt of unemployment benefits; Burgen's relationships with others; Burgen's receipt of his GED and testimony of his computer skills; and Burgen's treatment history, or lack thereof.  T. 33-34.

Burgen's testimony and record before the undersigned show a complete lack of treatment, as well as both a stated financial inability and lack of interest even assuming the insurance issues were rectified.  T. 55.  Burgen has also indicated that he has no

interest in taking prescription medication, and instead appears to have chosen to self medicate with excessive drinking and consistent drug useage. T. 59, 63. Such sentiments were echoed with Drs. Shapiro (T. 272) and Coleman (T. 307). Burgen's credibility is diminished by his failure to seek out treatment. <u>See</u> 20 C.F.R. § 404.1530 (b) (explaining that the failure to follow a prescribed treatment must be accompanied by a good reason). While "[c]ourts have observed that faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a questionable practice," <u>Cornell v. Astrue</u>, No. 11-CV-1064, 2013 WL 286279, at *8 (N.D.N.Y. Jan. 24, 2013) (citations omitted), Dr. Shapiro's assessment indicates that Burgen possessed an average level of intelligence and normal cognitive function. T. 273. This is further bolstered by Burgen's receipt of his GED, acknowledgment of his substance abuse, and independent decision to choose not to accept the forms of assistance provided.

A stated inability to pay or lack of access to free or low-cost medical services has been recognized as a good reason for failing to receive treatment. SSR 96-7p, 1996 WL 374186, at *8 (July 2, 1996). While at first, Burgen's testimony that he does not have insurance would seem to provide good reason and exempt him from an adverse credibility determination, it is important to note that Burgen stated that even if he did have access to insurance or low-cost care he still was not sure if he would pursue treatment. While the validity of these statements may appear questionable, Burgen's resolve not to accept assistance despite his financial situation has already been demonstrated by his testimony that he would rather live in a shack in the woods than accept a placement at the Oxford Inn. He had also decided that he would not even take prescription medication due to the side effects he read about on the internet;

however, there is no evidence that Burgen would have suffered from any one or combination of any of those side effects. Thus, there has been no good reason proffered by Burgen as to why he failed to seek out treatment.

Further, despite Burgen's contentions otherwise, the fact that Burgen collected unemployment benefits during a portion of the period during which he claims disability is extremely relevant to determining credibility. T. 65. "By applying for such benefits[, despite her current contentions, Burgen] affirmed that []he was ready, willing, and able to work." House v. Commissioner of Soc. Sec., No. 09-CV-913 (NAM/VEB), 2012 WL 1029657, at *12 (N.D.N.Y. Feb. 29, 2012). Consideration of the receipt of these benefits "was entirely proper and supported [the ALJ's] decision to discount [Burgen's] credibility." House, 2012 WL 1029657, at *12 (citing 20 C.F.R. §§ 404.1571, 416.971 (explaining that even if an individual is engaging in something less than "substantial gainful activity, it may show that you are able to do more work than you actually did.")).

Burgen also took exception to the ALJ's discussion of his activities of daily living, and relying upon such activities to demonstrate that Burgen's assertions were not entirely credible. Pl. Memorandum of Law at 15. Burgen reported to both consultative examiners, and testified at the hearing, that he was able to attend to his personal hygienic needs; he could do chores; he had a few good friends; he was pretty comfortable with technology and using computers to research, email, and download; he spent his day watching television, movies, and playing games on the computer; and he consistently went to the library alone. T. 59-62, 274, 303, 305. While it is true that an individual "need not be an invalid to be found disabled," Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998), these abilities in combination with the substantial evidence

outlined in the medical record above help to bolster the ALJ's decision to deny disability benefits.

Burgen also stated that the ALJ's reliance on the receipt of his high school diploma, specifically his ability to travel to and consistently attend weekly classes and maintain the mental acuity to pass the exam and receive his degree, was improper to consider when evaluating his credibility. However, such claims are incorrect. When the engagement in activities which are required to obtain one's GED or high school diploma is inconsistent with the plaintiff's proffered disability and alleged restrictions, consideration of those activities is appropriate when discrediting the plaintiff's subjective complaints. See Arrendondo v. Colvin, No. 13-CV-300-SMS, 2014 WL 2208076, at *10 (E.D.Ca. May 28, 2014) (affirming the ALJ's decision to give diminished weight to plaintiff's credibility due to her ability to complete her GED, babysit three young children and care for her bedridden mother despite her claims of fifteen years of disabling pain due to carpal tunnel and neck and back maladies).

Further, to the extent Burgen contends that examination of his friendships, and their potential effect on his credibility, was inappropriate, such allegations are also incorrect. According to the federal regulations, cited by both parties and the undersigned, there is a catch all provision which allows for consideration of any relevant factors concerning a plaintiff's limitations and restrictions. Accordingly, the ALJ was not incorrect in discussing these events or using them as a basis to assign less weight to Burgen's subjective complaints. Further, to the extent Burgen contends that the ALJ's decision should be disturbed because she "faile[d] to expressly consider every factor set forth in the regulations," such contentions are without merit because "the reasons for the ALJ's

determination of credibility are sufficiently specific to conclude that he [or she] considered the entire evidentiary record in arriving at his [or her] determination." <u>Sloan v. Colvin</u>, – F. Supp. 2d —, 2014 WL 2569037, at *11, (W.D.N.Y. Jun. 9, 2014) (citations omitted). For the reasons listed <u>supra</u>, the ALJ provided plenty of specific reasons from the list to establish Burgen's RFC; thus, "use of the boiler plate language [was appropriate because] . . . the ALJ . . . explain[ed] . . . her rationale for finding the plaintiff's testimony to be less credible." <u>Id.</u> (citations omitted).

Therefore, the ALJ reasonably determined that Burgen's statements were not fully credible and his decision should be affirmed.

### 4. Step Five of the Sequential Analysis

Burgen contends that the ALJ erred in concluding he could perform his previous work. To the extent that Burgen is re-alleging that substantial evidence did not support the ALJ's RFC or credibility determinations, such renewed contentions are similarly rejected for reasons already stated <u>supra</u>.

Under the Social Security Act, the Commissioner bears the burden of proof for the final determination of disability. <u>Pratt v. Chater</u>, 94 F.3d 34, 38 (2d Cir. 1996). The ALJ may apply the Grids or consult a VE. <u>See</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 462 (1983); <u>Rosa v. Callahan</u>, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2003). Here, a VE did not need to be questioned as Burgen's prior work and present abilities were obvious and thus he was found capable of performing his past relevant work. <u>Stanton v. Astrue</u>, 370 Fed App'x 231, 235 (2d Cir. 2010) (citing federal regulations to explain that use of a vocational expert is optional, not mandatory, if

necessary to help the ALJ clarify the demands of previous work performed and that, if it is determined that an individual can perform his or her prior work, he or she is not disabled).

Further, Burgen had the burden of proof to establish that he was unable to perform his past relevant work.  <u>See</u> <u>e.g.</u> <u>Bennett v. Sec. of United States Dep't of Health and Human Sevs.</u>, 769 F. Supp. 457, 461 (E.D.N.Y. 1991) (citations omitted).  He has failed to do so.  The ALJ's relied on appropriate resources to conclude that Burgen retained the ability to engage in his past relevant work as a warehouse worker.  This finding was not refuted.  Accordingly, the ALJ's decision should be affirmed.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Burgen's motion for judgment on the pleadings (Dkt. No. 12) be **DENIED** and the Commissioner's decision finding disability be **AFFIRMED**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C §636(b)(1); Fᴇᴅ R. Cɪᴠ. P. 72, 6(a), 6(e).

It is further **ORDERED** that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Date:  November 26, 2014
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge